```
              UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON
```

EAN HOLDINGS, LLC
a limited liability company,

       Plaintiff,

v.                                   Civil Action No. 2:13-26841

JOYCE ISHOLA,
JAMES LENNON PACE,
JAYRON WASHINGTON,
THOMAS CALDWELL,
VERNON CLEMENTS,
DIABLO BROWN,
CHARLESTON FIRE DEPARTMENT,
CHARLESTON AREA MEDICAL CENTER,
CITY OF CHARLESTON,
SEDGWICK CLAIMS MANAGEMENT,
ERIE INSURANCE COMPANY,
ASSOCIATED RADIOLOGISTS, INC.,
NCEP OF WEST VIRGINIA, INC.,
INTEGRATED HEALTH CARE PROVIDERS, INC.
d/b/a ORTHOPEDIC TRAUMA GROUP,
CHARLESTON PHYSICAL THERAPY SPECIALISTS, INC.,
and WEST VIRGINIA DEPARTMENT OF
HEALTH AND HUMAN RESOURCES,

       Defendants.

## MEMORANDUM OPINION & ORDER

Pending in this interpleader action is the motion "for judgment on the pleadings or, in the alternative, . . . for summary judgment," filed on December 4, 2014 by the claimant, Diablo Brown.

## I. Background and Procedural History

On November 28, 2012, Joyce Ishola rented a Mazda sedan (the "Rental Car") owned by the plaintiff-stakeholder, EAN Holdings, LLC ("EAN"). Compl. ¶ 20. A few days later, on December 1, 2012, James Lennon Pace was driving the Rental Car on Hunt Avenue in Charleston, West Virginia, when it collided with a vehicle owned by the City of Charleston (the "City"). Compl. ¶ 21. At the time of the accident, Brown and Jayron Washington were riding in the Rental Car, and Thomas Caldwell and Vernon Clements were in the City's car. Id.

The complaint alleges that some, or perhaps all, of the men were injured in the accident, Compl. ¶¶ 23-27; that the Charleston Fire Department ("Fire Department") transported some of the men from "the scene of the accident to the hospital," Compl. ¶ 28; that several entities subsequently provided medical care or pharmaceutical services to the injured parties, Compl. ¶¶ 29-33; and that some or all of the medical bills arising from the accident "may have been paid by Medicaid," Compl. ¶ 34. As relevant here, documents in the record suggest that Brown received treatment for injuries arising from the accident valued at $10,270.68, for which Medicaid, as administered by the West Virginia Department of Health and Human Resources ("DHHR"), paid $1,971.09. See DHHR's Response to Defendant Brown's Motion for

2

Judgment on the Pleadings, or, in the Alternative, Motion for Summary Judgment ("DHHR's Resp."), Exs. A, B.

"By operation of West Virginia law, [EAN] is self-insured and provided a bodily injury liability limit of $20,000 for each person as to any liability claim, with a limit of liability of $40,000 per accident." Compl. ¶ 22. Realizing that the accident was likely to give rise to a number of competing claims upon those sums, EAN instituted this interpleader action in the Circuit Court of Kanawha County on August 15, 2013, naming as defendants all of the "persons or entities to which [EAN]" was potentially "obligated to pay[.]" Compl. ¶ 39. EAN sought to deposit the $40,000 with the court for distribution between the claimants if, and to whatever extent, some or all of them were determined to be entitled to a recovery. Compl. at 38, 40, and Prayer for Relief. In other words, EAN wanted to resolve its liability to all potential parties in one shot by placing the limits of its insurance policy in the hands of the court, and allowing the claimants to contest the appropriate distribution of the money.

Before any money was deposited with the state court, the United States unilaterally removed the case to this court, under 28 U.S.C. § 1442(a)(1), on October 25, 2013. See Akin v. Ashland Chem. Co., 156 F.3d 1030, 1034 (10th Cir. 1998) (holding

3

that § 1442(a) "allows a federal officer independently to remove a case to federal court even though that officer is only one of several named defendants"). But the United States ultimately made no claim to the proceeds of EAN's policy, and was voluntarily dismissed from the case on December 10, 2013.

As for the other claimants, it appears that the Charleston Area Medical Center ("CAMC") answered in state court on September 23, 2013, claimed that Washington was "indebted to CAMC in the amount of $1,451.00 for hospital goods and services delivered and rendered as a direct consequence" of the accident, and sought to recover that amount from the available funds. CAMC later informed this court that it "decided . . . not [to] seek recovery [of] the $1,451.00 or any other sum arising out of the . . . accident," and was dismissed with prejudice on March 21, 2014. Similarly, Integrated Health Care Providers, Inc. filed a state-court answer on September 27, 2013, averring that it was making no claim to the proceeds of EAN's policy. It too was dismissed with prejudice by this court on March 21, 2014.[1]

The City and the Fire Department also answered in state court on September 26, 2013, jointly asserting that they

---

[1] One additional claimant, Wal-Mart Stores, Inc., doing business as Sam's Club Pharmacy, does not appear to have answered the interpleader complaint in state court, but later "waive[d] any claim . . . to any portion of" EAN's coverage, and was dismissed with prejudice by this court on November 27, 2013.

4

had not been reimbursed for $2,242.36 and $8,358.10 in workers compensation claims paid to Clements and Caldwell, respectively, and $869.94 "in emergency medical services and ambulance transportation provided to [Pace] ($287.84 balance), [Washington] ($287.84 balance), and [Brown] ($294.26 balance) by the [Fire Department] in the immediate aftermath of the accident." The City and Fire Department have not, however, appeared by counsel in federal court to press their claim for reimbursement.

NCEP of West Virginia, Inc. ("NCEP"), Clements, and Caldwell each answered in state court (on September 16, 2013, September 23, 2013, and October 1, 2013, respectively), but did not specifically claim a recoverable amount. NCEP has not appeared by counsel in this court. Counsel for Caldwell and Clements participated in a Rule 26(f) planning conference on March 11-12, 2014, but neither has moved to recover any amount.

According to EAN, three other claimants -- Sedgwick Claims Management ("Sedgwick"), Associated Radiologists, Inc. ("Associated"), and Charleston Physical Therapy Specialists, Inc. ("Specialists") -- "were served with process through the West Virginia Office [of] the Secretary of State," See Status Report ¶ 7 (ECF No. 19, filed February 3, 2014), but from all that appears in the record, they have not responded to the

5

interpleader complaint in any manner, in any court. Finally, the record suggests that several additional named claimants -- Ishola, Pace, and Washington -- were not served with process either before or after removal, id. ¶ 11, and they have not appeared.

Erie Insurance Company ("Erie") is represented by counsel in this court, answered the interpleader complaint on November 7, 2013, but makes no claim to the proceeds of EAN's insurance. Brown answered the interpleader complaint in state court on October 24, 2013. As noted, he filed the pending motion for summary judgment on December 10, 2014, seeking to recover $20,000. See Defendant Diablo Brown's Motion for Judgment on the Pleadings, or, in the Alternative, Motion for Summary Judgment ("Brown's Mot.") ¶¶ 7, 10-11, and Prayer for Relief. DHHR answered and counterclaimed in this court on August 22, 2014; it also filed a response to Brown's motion on December 20, 2014. Those filings assert that DHHR is entitled to recover $1,960.34[2] as Brown's subrogee for medical expenses paid, through Medicaid, on Brown's behalf. The agency does not, however, oppose Brown's requested recovery. In fact, Brown subsequently filed a "Notice of Contingent Settlement" on

---

[2] DHHR's answer asserts that the agency paid $1,960.34 for Brown's care. Documents submitted in support of DHHR's response to Brown's motion for summary judgment indicate that the figure was $1,971.09.

6

January 23, 2015, representing that he and DHHR had "reached an agreement" "contingent upon [Brown] being paid" the $20,000 he seeks.

## II. Discussion

Generally speaking, "interpleader allows a third party holding funds, which two [or more] parties claim the right to distribution from, to bring the competing parties into court to litigate their competing claims among themselves instead of litigating it against the party holding the funds." See 48 C.J.S. Interpleader § 1 (footnote omitted). The procedure is rooted in equity, but may be specifically codified by rule or statute. Id. §§ 4-5. Both West Virginia and federal statutes and rules provide for interpleader. See 28 U.S.C. § 1335; Fed. R. Civ. P. 22; see also W. Va. Code § 56-10-1; W. Va. R. Civ. P. 22.

Here, the complaint invokes West Virginia's statutory interpleader provision, section 56-10-1, which provides as follows:

> A defendant in an action brought against him for the recovery of money which he does not wish to defend, but which money is claimed by some third person, or for the recovery of the possession of personal property to which he makes no claim, but which is claimed by a third person, may file his affidavit stating the facts in relation thereto, and that he

7

>does not collude with such third person but is ready to pay the money claimed, or deliver the property, to the owner thereof, as the court may direct, and the court may thereupon make an order requiring such third person to appear and state the nature of his claim, and maintain or relinquish the same, and may in the meantime stay the proceedings in such action. . . . . If such third person, on being so served, shall appear, the court shall allow him to make himself defendant in the action and, either in such action or otherwise, cause such issue or issues to be tried as it may prescribe, and may direct which party shall be considered the plaintiff in the issues; and shall give judgment upon the verdict rendered or, if a jury be waived by the parties interested, shall determine their claims in a summary way. The court may also make such order for the disposition of the money or property which is the subject matter of the action, pending the same, as to it may seem proper, and may enter judgment as to costs as may be just and proper.

W. Va. Code § 56-10-1.

### A. Brown's Claim

In his motion for summary judgment, Brown states that he was involved in the accident, Brown's Mot. ¶ 8; that he suffered a broken shoulder/collarbone, id. ¶ 9; that he incurred medical costs and expenses totaling approximately $23,545.08, id. ¶¶ 9-10; and that he is entitled to recover his incurred costs and expenses "under the terms of the insurance policy covering the accident," id. ¶¶ 9, 11.  He seeks to recover $20,000.00 -- "the maximum allowable per-person amount available[.]"  Id. ¶ 11.

Although this case arises under West Virginia's interpleader statute, the federal rules of civil procedure govern Brown's motion for summary judgment. See Fed. R. Civ. P. 1; Rowland v. Patterson, 852 F.2d 108, 110 (4th Cir. 1988) ("Federal courts apply federal rules of procedure, . . . unless the Erie doctrine commands otherwise."). Under Rule 56, Brown is entitled to summary judgment if he "shows that there is no genuine dispute as to any material fact and [that he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"A fact is material if it 'might affect the outcome of the suit under the governing law.'" Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). And a dispute of fact is "genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" Libertarian Party, 718 F.3d at 313 (quoting Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012)). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by[] citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions,

interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

Here, Brown alleges that he incurred approximately $23,545.08 in medical costs arising from treatment for injuries he suffered in the accident, Brown's Mot. ¶ 10, but those expenses are not itemized or described in any detail. In support of the total figure, he states that he "has submitted documentation . . . [,s]pecifically, see Docket Nos. 30 & 41, which are Certificates of Service for Mr. Brown's disclosures . . . under the discovery rules," which disclosures apparently "include the accident report for the subject accident as well as medical records and expenses demonstrating the nature and extent of Mr. Brown's injuries." Id. ¶ 7. The referenced docket entries are indeed certificates of service for discovery disclosures, but the discovery materials themselves -- presumably the accident report and medical records -- are not attached, nor are they separately attached to Brown's motion. See L.R. Civ. P. 7.1(a)(1) ("Copies of depositions (or pertinent portions thereof), admissions, documents, affidavits, and other such materials or exhibits upon which the motion relies shall be attached to the motion[.]"). As a result, Brown has not at this time supported his assertion that he incurred $23,545.08 in medical expenses.

DHHR, on the other hand, has submitted documents indicating that Brown did indeed receive some treatment in the months following the accident, perhaps aggregating $10,270.68 -- an amount considerably lower than the $23,545.08 that Brown claims.  See DHHR's Resp., Ex. A.  But DHHR's response to Brown's motion casts serious doubt on whether even that lower figure was actually incurred by Brown.  See id. at 5 ("The fact that [d]efendant Brown was a Medicaid recipient at all times relevant to the Interpleader Complaint indicates that he paid $0 in medical expenses. . . . .  As a WV Medicaid recipient, Brown was not liable for any deductibles and co-pays.  Moreover, there is no 'balance billing' in Medicaid.  The Medicaid provider is obligated to accept the amount paid by Medicaid as payment in full and may not bill the recipient for the excess charges between the amount billed Medicaid and the contracted amount paid by Medicaid."); see also id., Ex. A ¶¶ 5, 14-16 (affidavit of DHHR Senior Specialist Karen Burgess attesting that Brown was enrolled in Medicaid at the time of accident; that WV Medicaid was billed $10,270.68 for treatment provided to Brown; that Medicaid paid $1,971.09 of that amount; that no deductible, coinsurance or copayment applied; and that "the Medicaid provider agreement" prohibits providers from billing "the Medicaid recipient for any amount in excess of the amount paid by DHHR").

Given that Brown bases his right to recover from EAN's insurance on medical expenses allegedly incurred by him as a result of the accident, whether he actually incurred any expenses and, if so, their aggregate amount, are material facts. Brown has not properly supported his version of the facts ($23,545.08 in incurred expenses), and his unsupported assertion is, in any event, drawn into dispute by DHHR's evidence. Accordingly, Brown's motion for summary judgment is denied, albeit without prejudice to Brown renewing his motion at a later date to be fixed by the court. See Fed. R. Civ. P. 56(e)(1) ("If a party fails to properly support an assertion of fact . . . . the court may[] give an opportunity to properly support or address the fact[.]").

B. Other Issues

Even if Brown's motion were properly supported, equitable considerations would counsel against an award at this time. It appears that Ishola, Pace, and Washington were never personally served with the interpleader complaint in this case, and they have neither appeared nor participated in these proceedings. See Status Report ¶ 11. Counsel for EAN has attempted to locate and serve those three, but there is no indication that those efforts were successful.

Ordinarily, dismissal of those parties would be the appropriate course. See Fed. R. Civ. P. 4(m). But, considering that the purpose of interpleader proceedings is, at least in part, to "protect the stakeholder from multiple claims, multiple liability, or a multiplicity of suits or litigation and double vexation," 48 C.J.S. Interpleader § 2 (footnotes omitted), and given that Pace and Washington were both directly involved in the accident, proceeding without them would be at best inefficient. Either way, the status of the as-yet unserved parties must be resolved. Accordingly, EAN is ordered within thirty days of the entry of this order to serve Ishola, Pace, and Washington.

### III. Conclusion

For the foregoing reasons, it is ORDERED that:

1. Brown's motion for summary judgment be, and it hereby is, denied without prejudice;

2. EAN be, and it hereby is, directed to serve Ishola, Pace, and Washington within thirty days of the entry of this order; and

3. The remaining pretrial dates and deadlines fixed by the court's scheduling order be, and they hereby are, continued indefinitely.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record, and to the following parties, return receipt requested, at the addresses listed below.

DATED: March 20, 2015

John T. Copenhaver, Jr.
United States District Judge

Joyce Ishola
1424 3rd Avenue, Apartment 6
Huntington, W.V. 25701

Jayron Washington
1804 McVeigh Avenue
Huntington, W.V. 25705

Associated Radiologists, Inc.
P.O. Box 11137
Charleston, W.V. 25339

Sedgwick Claims Management
P.O. Box 94950
Cleveland, OH 44101

James Lennon Pace
No Address on File

Charleston Physical Therapy Specialists, Inc.
c/o Hugh C. Murray301 RHL Boulevard, Suite 202
Charleston, W.V. 25309

Vernon Clements
c/o Todd W. Reed, Esq.
406 Tennessee Avenue
Charleston, W.V. 25302

City of Charleston
c/o Paul D. Ellis
Office of the City Attorney
P.O. Box 2749
Charleston, W.V. 25330

NCEP of West Virginia, Inc.
c/o Emily Hess
332 Congress Park Dr.
Dayton, OH 45459